**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**LAMAR GRIMES**,

                                        Petitioner,

            - v -                                        Civ. No. 9:10-CV-0068
                                                              (GLS/RFT)

**JOHN B. LEMPKE**,

                                        Respondent.

**APPEARANCES:**                                **OF COUNSEL:**

**LAMAR GRIMES**
Petitioner, *Pro Se*
05-B-2451
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

**HON. ERIC T. SCHNEIDERMAN**                **ALYSON J. GILL, ESQ.**
Attorney General of the State of New York    Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

        *Pro se* Petitioner Lamar Grimes brings this Petition for a Writ of *Habeas Corpus,* pursuant

to 28 U.S.C. § 2254, challenging the constitutionality of his current incarceration on the following

grounds: (1) the trial court should have suppressed the identification evidence; (2) his plea was not

knowing, intelligent and voluntary due to (a) errors in the plea allocution and coercive statements

made by the sentencing judge and his counsel, and (b) the ineffectiveness of counsel; (3) the sentence

was harsh and excessive; and (4) the waiver of the right to appeal was not knowing voluntary and

intelligent and was otherwise void as against public policy. Dkt. No. 18, 2ⁿᵈ Am. Pet. For the reasons stated below, it is recommended that the Petition be **DENIED**.

## I. BACKGROUND

According to State Court Records, On January 24, 2005, petitioner broke into the home of E.B., a female acquaintance, and raped and beat her at knife-point and strangled her with a telephone cord causing her to incur significant injuries. Dkt. 10-24, Wade Hr'g Tr. (hereinafter "Wade Tr."), dated June 7, 2005, at pp. 3–7 & 9–11; *see also* Dkt. No. 10-24, Pet.'s Plea Tr. (hereinafter "Plea Tr."), dated July 27, 2005, at pp. 8–15. Petitioner then set fire to E.B.'s apartment complex while she was still inside, stole property from E.B., and when confronted by the police, gave them a false name. Plea Tr. at pp. 9 & 14–15.

On June 7, 2005, at a Wade Hearing,[1] Petitioner unsuccessfully moved to suppress evidence that the victim, an acquaintance of Petitioner, had positively identified him as the perpetrator. Wade Tr. at pp. 23–24. On July 27, 2005, Petitioner entered into a plea agreement whereby he waived his right to appeal and pled guilty to fifteen separate counts:

- one count of rape in the first degree (N.Y. PENAL L. (hereinafter "PL") § 130.35(1)), a class B felony;
- one count of sexual abuse in the first degree (PL §130.65(1)), a class D felony;
- two counts of burglary in the first degree (PL §§ 140.30(2) & 140.30(3)), class B felonies;
- two counts of assault in the first degree (PL §§ 120.10 (1) & 120.10(4)), class B felonies;
- two counts of robbery in the first degree (PL§§ 160.15(1) & 160.15(3)), class B felonies;
- one count of arson in the second degree (PL§150.15), a class B felony;
- one count of assault in the second degree (PL § 120.05(6)), a class D Felony;

---

[1] A Wade Hearing is conducted to determine the admissibility of identification testimony. *United States v. Wade*, 388 U.S. 218 (1967) codified in CPL § 710.40(4).

- one count of criminal impersonation in the second degree (PL § 190.25(1)), a class A misdemeanor;
- one count of reckless endangerment in the first degree (PL§ 120.25) a class D Felony; and
- three counts of petit larceny (PL § 155.25), class A misdemeanors.

Plea Tr. at pp. 2–3 & 7–15.

Per the terms of the plea agreement, Petitioner received an aggregate sentence of thirty (30) years with five (5) years post-release supervision. *See* Dkt. No. 10-24, Sentencing Hr'g Tr. (hereinafter "S. Tr."), dated Aug. 17, 2005, at pp. 10–11.

On April 24, 2007, Petitioner made a post-judgment motion to vacate his conviction pursuant to N.Y. CRIM. PROC. L. (hereinafter "CPL") § 440. State Ct. R. (hereinafter "R."),[2] Ex. A, Pet'r 1st Mot. to Vacate (hereinafter "1st § 440 Motion"), dated Apr. 24, 2007. The motion was denied. R., Ex. C, Dec. & Order ("D & O"), dated Aug. 6, 2007.

In December of 2007, Petitioner filed a direct appeal to the Appellate Division. *See generally* R., Ex. G, Pet'r Appellate Div. Br., dated Dec. 10, 2007. On July 3, 2008, the New York State Appellate Division, Fourth Department, (hereinafter "Appellate Division") affirmed Petitioner's conviction. *People v. Grimes*, 53 A.D.3d 1055 (N.Y. App. Div., 4th Dep't 2008). On July 11, 2008, Petitioner applied for leave to review from the New York Court of Appeals (hereinafter "Court of Appeals"). R., Ex. J, Lt.-Appl. for Leave to Appeal, dated July, 11, 2008. That request was denied on September 30, 2008. *People v. Grimes*, 11 N.Y.3d 789 (N.Y. Ct. App. 2008).

On December 28, 2010, Petitioner filed a second motion to vacate his conviction pursuant to CPL § 440. R., Ex. S, Pet'r 2nd Mot. to Vacate (hereinafter "2nd § 440 Mot."). The motion was denied. R., Ex. U, D & O, dated Feb. 24, 2010. Petitioner sought leave to appeal the denial on

---

[2] The State Court Record consists of Docket Numbers 10 through 10-23.

March 23, 2010.[3]  R., Ex. V, Pet'r Mot. for Leave to Appeal, dated Mar. 23, 2010.

The operative pleading in this case is the Second Amended Petition, filed on March 18, 2010.[4]  Respondent has replied to the allegations therein.  Dkt. Nos. 8-1, Resp't Opp'n & 23, Resp't Supp. Opp'n.  Respondent concedes that Petitioner's claims are timely, and with the exception of Petitioner's claims that his sentence was harsh and excessive and that the wavier of his right to appeal was void as against public policy, that his claims were also properly exhausted.

## II. DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403

---

[3] At the time the Second Amended Petition was filed, Petitioner's application for leave to review the denial of his second § 440 motion had not yet been decided.  However, the decision does not affect the outcome of our Report and Recommendation.

[4] The original Petition was filed on January 20, 2010. Dkt. No. 1.  In a Decision and Order issued on February 22, 2010, The Honorable Gary L. Sharpe, Chief United States District Judge, rejected that Petition and ordered Petitioner to file an amended petition in compliance with the pleading requirements of FED. R .CIV. P. 8.  Dkt. No. 3.  Petitioner filed his first Amended Petition on March 23, 2010.  Dkt. No. 4.  That Petition was accepted by Chief Judge Sharpe. Dkt. No. 5, Dec. & Ord., dated Mar. 26, 2010.  On October 15, Petitioner requested permission to amend his first Amended Petition, which was denied.  *See* Dkt. Nos. 13, Pet'r Lt-Mot., dated Oct. 15, 2010, & 14, Dec. & Ord., dated Dec. 13, 2010.  Petitioner them moved once again seeking to amend his Amended Petition, that request was granted in part.  *See* Dkt. Nos. 15, Pet'r Mot. to Amend, dated Jan. 11, 2011, & 17, Dec. & Ord., dated Mar. 31, 2011.  Petitioner then filed his second Amended Petition on April 27, 2011. Dkt. No. 18.  On June 14, 2011, Chief Judge Sharpe ordered that the second Amended Petition be considered the operative pleading in this case, and ordered that the ninth ground offered by Petitioner (in which he challenged the constitutionality of certain New York State statutes) be stricken in accordance with its earlier Order.  Dkt. No. 21.

F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B. Petitioner's Claims

### 1. Sentencing Claims

Petitioner claims that his sentence was harsh and excessive. 2nd Am. Pet. at ¶ 13(4). It is well settled that the issue of whether a sentence was overly harsh or excessive is not a proper issue for review in the *habeas* context unless the sentence was outside of the permissible range provided for by state law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional

issue is presented where, as here, the sentence is within the range prescribed by state law.").

As to the individual counts, the court imposed the following sentence: Petitioner was sentenced to a determinate term of fifteen (15) years with five (5) years of post release supervision (hereinafter "PRS") on each of his class B felony convictions, *i.e.,* first degree rape, second degree arson, first degree burglary, first degree assault, and first degree robbery. *See* S. Tr. at pp. 10–11; *see also* PL §§ 120.10, 130.35, 140.30, 150.15, & 160.15. The maximum sentence for a class B felony in New York is twenty-five (25) years, and may include a term of PRS not to exceed five (5) years. PL §§ 70.00(2)(b) & 70.45. Petitioner was further sentenced to a determinate term of seven (7) years with five (5) years of PRS for his class D felony convictions, *i.e.,* first degree sexual abuse and second degree assault. *See* S. Tr. at pp. 10–11; *see also* PL §§ 120.10 & 120.05. The maximum sentence for a class D felony in New York is seven (7) years, and may include a maximum of five (5) years PRS. PL §§ 70.00(2)(d) & 70.45. Additionally, Petitioner was sentenced to an indeterminate term of three and a half ($3^{1/2}$) to seven (7) years on the first degree reckless endangerment count (also a class D felony), and time served on the criminal impersonation count and petit larceny counts (both class A misdemeanors). *See* S. Tr. at pp. 10–11; PL §§ 120.25, 155.25, & 190.25. The court further pronounced that "counts one, two, four, five, six, seven, eight, nine, ten and eleven shall run concurrent. Count three will run consecutive to all felony counts. Counts twelve and fifteen will merge with the state sentence which will constitute a thirty-year determinate sentence, five years post release supervision." S. Tr. at p. 11; *see also infra* Part II. B(4)(iii); CPL § 70.35. Therefore, because Petitioner's sentences were well within the range permissible by state law, he has not presented a cognizable claim for purposes of federal *habeas* review. *See White v. Keane*, 969 F.2d at 1383. Thus, we recommend that this ground of the Petition

be **DENIED**.[5]

## 2. Waiver of Right to Appeal

Petitioner has failed to exhaust his claim that the waiver of his right to appeal was not intelligently and voluntarily entered, and was otherwise void as against public policy. *See* 2nd Am. Pet. at ¶ 13(3). A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for *habeas corpus*. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement with respect to a claim, a Petitioner must "present the substance of the same federal constitutional claim[s]" to the state courts "that he now urges upon the federal courts[.]" *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (internal quotation marks omitted) (citing *Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir. 2001)). "A federal constitutional claim has not been fairly presented to the State courts unless the petitioner has informed those courts of 'all the essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'" *Strogov v. Att'y Gen. of the State of New York*, 191 F.3d 188, 191 (2d Cir. 1999) (citing *Daye v. Att'y Gen. of the State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (further citing *Picard v. Connor*, 404 U.S. 270, 276-277 (1971)). A claim may be "fairly present[ed] to the state courts[,] . . . without citing chapter and verse of the Constitution," if there is: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional

---

[5] Petitioner also claims that his sentence was "unauthorized, illegally imposed or otherwise invalid as a matter of law." 2nd Am. Pet. at ¶ 13(7). However, Petitioner has not alleged a single fact in support of this claim in his Second Amended Petition, nor did he address this claim in his Memorandum of Law in Support of his Second Amended Petition. *See generally id.; see also* Dkt. No. 20, Pet'r Mem. of Law. Petitioner has twice been cautioned by this Court that his pleadings need to contain all of the facts necessary to establish his claims, and that he may not incorporate by reference any documents or past pleadings in his Petition. *See* Dkt. Nos. 3, Dec. & Ord. at p. 3 & 14, Dec. & Ord. at p. 3. Therefore, in accordance with our previous Order we will not search the record or Petitioner's previous Petitions in order to find a cogent argument to support his claim. Having failed to provide any fact or argument in support of his claim that his sentence was unauthorized or illegally imposed, we find that claim to be meritless.

analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Daye v. Att'y Gen. of the State of New York*, 696 F.2d at 191; *see also Smith v. Duncan*, 411 F.3d 340, 348 (2d Cir. 2005).

On direct appeal, Petitioner raised a claim that the waiver of appeal he signed, pursuant to his plea agreement, was not voluntarily or intelligently entered and void as against public policy. R. at Ex. G, Pet'r Appellate Br. at p. 22. After losing his direct appeal, Petitioner sought leave for review from the Court of Appeals. R. at Ex. J, Lt-Appl. for Leave to Review at p. 2. Although Petitioner raised the issue in both motions, he did so solely on state law grounds. *See* R. at Exs. G & J. Petitioner failed to cite a single federal case or even a state case directly employing federal constitutional analysis, as is required for "fair presentation" by the first two factors set forth in *Daye*. Similarly, Petitioner neither asserted his claim in terms so particular as to call to mind a specific right protected by the Constitution, nor alleged "a pattern of facts that is well within the mainstream of constitutional litigation," as required by the third and fourth *Daye* factors. *Daye v. Att'y Gen. of the State of New York*, 696 F.2d at 194; *see also Smith v. Duncan*, 411 F.3d at 348.

Moreover, this claim should be deemed exhausted but procedurally barred because any attempt by Petitioner to re-raise this claim in state court would be futile. *See Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994) (finding that when "it is clear that the unexhausted claim is procedurally barred by state law and . . . its presentation in the state forum would be futile[,]" a district court may deem such claim exhausted but also procedurally defaulted) (citing *Aparicio v. Artuz*, 269 F.3d at 90). Petitioner is barred from returning to state court to re-present this claim because he has already taken advantage of his one and only chance to appeal the loss of his direct

appeal to the Court of Appeals. *See Aparicio v. Artuz*, 269 F.3d at 91 (finding that a petitioner is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals . . . [and] New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal.") (citing CPL §§ 450.10(1) & 440.10(2)(c), & N.Y. Court R. § 500.10(a)).

Where a prisoner has defaulted on his federal claims in state court, a district court may reach the merits of such claim only upon a demonstration of "cause for the default and actual prejudice," or that a "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999). Examples of external factors include "interference by official," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bossett v. Walker*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993). A fundamental miscarriage of justice "occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Rodriguez v. Mitchell*, 252 F.3d 191, 203 (2d Cir. 2001) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

Petitioner has failed to demonstrate cause for the default,[6] resulting prejudice, or that failure

---

[6] To be sure, Petitioner claims that due to ineffective assistance of counsel his plea was not knowing, voluntary and intelligent; he does not however cite ineffective assistance of counsel as the "cause" of his failure to comport with (continued...)

to review this claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 748-50. Therefore, we recommend that the second Amended Petition be **DENIED** as to this ground.

### 3. Failure to Suppress Identification Evidence

Petitioner claims that the lower court erred by failing to suppress identification evidence. 2nd Am. Pet. at ¶ 13(1). However, Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. at 729 (citations omitted); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a *habeas* petition. *Harris v. Reed*, 489 U.S. at 264 n.10.

Here, the Appellate Division determined that "[t]he valid waiver by defendant of the right to appeal encompasses his challenge to the court's suppression ruling." *People v. Grimes*, 53 A.D.3d at 1055–56. New York permits a defendant the right to appeal from an adverse ruling in a pretrial suppression hearing despite the fact that the conviction is based upon a guilty plea. CPL § 710.70 (2) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty."); *Lefkowitz v. Newsome*, 420 U.S. 283, 288–92 (1975). However, a defendant may

---

[6](...continued)
state procedural laws. *See* 2nd Am. Pet. at ¶¶ 13(5) & 13(8).

waive the right to appeal as part of a plea agreement, and that waiver encompasses the right to appeal suppression rulings. *People v. Kemp*, 94 N.Y.2d 831, 833 (N.Y. Ct. App. 1999). It has been held that a decision predicated on a valid waiver of the right to appeal has been decided on an independent and adequate state law ground. *See Garner v. Superintendent of Upstate Corr. Facility*, 2007 WL 2846907, at *18 (N.D.N.Y. Sept. 26, 2007) (citing *Coleman v. Thompson*, 501 U.S. at 731 for the proposition that "[s]ince the state courts specifically predicated the dismissal of Garner's . . . claim on his waiver of the right to appeal, the decision rests upon an independent and adequate state ground, and federal review accordingly is barred."); *see also Acosta v. Giambruno*, 326 F. Supp. 2d 513, 522 (S.D.N.Y. 2004) (finding that petitioners "affirmative waiver of his right to appeal also provides further independent and adequate state grounds to deny habeas relief"); *Haynes v. New York*, 2012 WL 6675121, at *8 (E.D.N.Y. Dec. 21, 2012) (citing cases for the same)

Accordingly, federal review of Petitioner's claim is barred. Therefore, we recommend that the Second Amended Petition be **DENIED** as to this ground.

### 4. *Plea, Plea Allocution, and Ineffective Counsel*

Petitioner argues that his plea was not voluntarily and intelligently entered into because of errors made by the court during the plea allocution, because he was coerced by his counsel and the judge, and because his counsel was ineffective. 2nd Am. Pet. at ¶¶ 13(2), 13(5)–13(6), & 13(8). Respondent argues that Petitioner's involuntary plea claim is barred and meritless.[7] Resp't Opp'n at p. 28. Although we do not agree that Petitioner's involuntary plea claim was decided on an independent and adequate state ground, we do find that it is meritless.

---

[7] Respondent does not address wether Petitioner's ineffective assistance of counsel claim was procedurally defaulted. *See generally* Resp't Supplemental Opp'n.

When determining whether a claim was settled on independent and adequate state grounds we must focus on the decision issued by the last court to "render a judgment" on the claim. *See Harris v. Reed,* 489 U.S. at 261–62. Although Petitioner's involuntary plea claim was considered on direct appeal, the Appellate Division considered the merits of this claim a second time when entertaining Petitioner's second § 440 Motion. *See* R. at Exs. I & U. In that decision the Appellate Division held that Petitioner's involuntary plea claim was meritless and procedurally barred, pursuant to CPL § 440.10(2)(a),[8] because he had already raised it on direct appeal. *See* R. at Ex. U.

It is unclear whether CPL § 440.10(2)(a) is sufficient to procedurally bar federal *habeas* review. *See Garner v. Superintendent of Upstate Corr. Facility*, 2007 WL 2846907, at *20 (discussing the "diverging views" in the Second Circuit regarding whether CPL § 440.10(2)(a) is an independent and adequate state ground precluding federal *habeas* review); *see also Slater v. Conway*, 2012 WL 777481, at *10 (W.D.N.Y. Mar. 7, 2012) (citing *Garner* in support of its decision to decide the case on the merits rather than find the claim procedurally barred under CPL § 410.10(2)(a)). Given the lack of guidance on this issue from the Second Circuit, as well as the split between the district courts within the Circuit, we are unwilling to conclude that CPL § 440.10(2)(a) is an independent and adequate state ground that precludes federal *habeas* review. Moreover, given that Petitioner's claims are otherwise meritless, such a conclusion is unnecessary.

The Fifth Amendment requires guilty pleas to be voluntary and intelligent in order to withstand constitutional muster. *Brady v. United States*, 397 U.S. 742, 747-48 (1970). "To determine the voluntariness of a plea, the court should consider all of the relevant circumstances,

---

[8] CPL § 440.10(2)(a) states that "the court must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue."

*-12-*

including the possibility of a heavier sentence following a guilty verdict after trial, the Defendant's previous contact with the criminal justice system, and whether the court addressed the defendant and explained his options." *Bello v. People*, 886 F. Supp. 1048, 1054 (W.D.N.Y. 1995) (citing *Magee v. Romano*, 799 F. Supp. 296, 300 (E.D.N.Y. 1992)). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted). Courts will also look to see whether the plea was entered into with the advice of competent counsel. *United States v. Broce*, 488 U.S. 563, 574 (1989).

The following colloquy between Petitioner and the Honorable William D. Walsh, Onondaga County Court Judge, occurred at the plea hearing:

> The Court:     Mr. Grimes, the original offer to you involved a sentence of 40 years. And that's because a number of counts were going to be dismissed in return for that plea. However, I indicated to Mr. Johnson this morning that after reviewing the case, and taking into consideration family that would have to go through this, and the victim herself, I will allow, if you pled guilty to the entire indictment, I would sentence you to a maximum of 30 years determinate in the State correctional facility. However, you would have to plead to every single count in the indictment in order to allow me to sentence you to that. Otherwise, Mr. Dawson, on behalf of the People, could dictate the sentence. So you would have to plead to the entire indictment, and this would all be conditioned upon a waiver of appeal. Is that how you want to dispose of this?

> Defendant:     Yes.

> The Court:     I am going to ask you some more questions. I am going to have you sworn to tell the truth. Before you answer a question, you may speak with Mr. Johnson about the question before you answer it. Do you understand?

> Defendant:     Yes.

>     . . .

*-13-*

| | |
|---|---|
| The Court: | Any questions before you're sworn in? |
| Defendant: | No. |
| The Court: | Do you read and write English, Mr. Grimes? |
| Defendant: | Yes. |
| The Court: | Do you have any problems in understanding the English language? |
| Defendant: | No. |
| The Court: | Do you have any physical or mental problems or have you consumed any alcohol or drugs that would prevent you from understanding these proceedings? |
| Defendant: | No. |
| The Court: | You're entering this guilty plea freely and voluntarily and because you are guilty? |
| Defendant: | Excuse me? |
| The Court: | Are you entering these guilty pleas freely and voluntarily and because you are guilty? |
| Defendant: | Yes. |
| The Court: | Do you understand that under the law you have a right to a trial before the Court or by a jury. You have the right to see the people who accuse you, hear the prosecutor examine them, and have your lawyer cross-examine them. By these pleas you're going to waive that right to confront those witnesses at trial, do you understand that? |
| Defendant: | Yes. |
| The Court: | Do you understand that at such a trial the People would have to prove every element of each crime charged beyond a reasonable doubt to secure a conviction? |
| Defendant: | Yes. |
| The Court: | You should also understand that you have an absolute right to remain silent. |

But by these pleas you're going to waive that right. I am going to ask you about this event, you're going to admit to me that you committed these crimes. Do you understand that?

Defendant: Yes.

The Court: You should further understand that the pleas of guilty that you're about to enter is just like a conviction after trial, it's just as if I or the jury had, at the trial of your case, heard from the witnesses, what they had to say about your conduct, and after deliberating on that testimony reported a verdict that we find you guilty of rape in the first degree, class B felony punishable by up to 25 years determinate and five years post-release supervision; sexual abuse in the first degree – which is a class D-felony?

The Court: – D violent punishable by up to seven years. Arson in the second degree, which is a class?

Mr. Dawson: B violent.

The Court: – B violent, 25 years determinate, five years post release supervision. The same for burglary in the first degree, assault in the first degree. Reckless endangerment, or robbery in the first degree, the reckless endangerment first is a –

Mr. Dawson: I believe that's a D nonviolent.

The Court: – D felony, punishable by up to seven years. Petty larceny and criminal impersonation in the second degree which are misdemeanors punishable by up to a year, do you understand all that?

Defendant: Yes.

The Court: Now you talked this over with Mr. Johnson, do you have any questions of him or myself at this time?

(Pause.)

The Court: Any questions at all, Mr. Grimes?

Defendant: Yes. Is there anyway that I could just think about it?

The Court: No. It happens today. We got the jury coming in Monday. That's the only reason I scheduled this today was to give you one last opportunity to think about it, and to review the offer. So it happens

today or you stand trial, and whatever happens happens.

Defendant:      No questions.

The Court:      All right. You should also know that if you get into any new trouble – (unintelligible) – and you're convicted of it, you must go to state prison for mandatory period of time. Do you understand that?

Defendant:      Excuse me. No, I didn't hear you.

The Court:      If you're convicted of these, you would have a felony conviction on your record. Down the road, if you got a new felony charge or convicted of it, you would have to go to state prison for a mandatory period of time?

Defendant:      Okay.

The Court:      Alright. Now as a condition of this disposition you're required to waive your right to appeal. Do you understand that you have the right to appeal your conviction and sentence by the filing of a notice of appeal, and if you cannot afford an attorney to take your appeal, one will be assigned free of charge. Do you understand that?

Defendant:      Yes.

The Court:      Now do you understand that by waiving your right to appeal, if later on you are not happy with this plea offer sentence, you cannot ask a higher court to reverse or undo what would be done here today and on the date of sentence – do you understand that?

Defendant:      Yes.

The Court:      Do you have any questions of Mr. Johnson or myself at this time concerning your waiver of this right?

Defendant:      No.

The Court:      On the day of sentence I am required to sign a written waiver of your right to appeal, do you agree to sign that written waiver at the time of sentencing?

Defendant:      (Pause.) Yes.

The Court:      Okay. Do you understand that if you failed to do so, your failure

would be considered a breach of the plea agreement, I wouldn't be bound by my sentence promise, and I wouldn't permit a withdrawal of the plea, and I could feel free to sentence you up to those maximums that I just told you about, Do you understand that?

Defendant:     Yes.

Plea Tr. at pp. 2–8.

Statements made at a plea allocution "carry a strong presumption of verity." *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Here the court very cogently explained the plea offer to Petitioner, the crimes of which he was accused and their potential maximum sentences, the collateral consequences of pleading guilty, as well as Petitioner's rights and the effect of waiving those rights to accept the offered plea agreement. Petitioner acknowledged that he understood each and every statement made by the court and the court offered Petitioner multiple opportunities to ask questions of either the court or his attorney, but Petitioner declined each time. Petitioner acknowledged that he understood and could read English, that he suffered from no mental or physical impairments (including drug or alcohol induced) that would prevent him from understanding or voluntarily entering into the plea. Thus, generally speaking Petitioner's plea appears to have been intelligently made and voluntarily entered.

Yet, Petitioner claims that his guilty plea was not voluntary, knowing, and intelligent because (i) of various errors in the trial court's plea allocution (*i.e.,* failure to conduct a proper factual allocution, failure to ascertain Petitioner's awareness of the waiver of a meritorious affirmative defense, and Petitioner had not reviewed the written waiver until sentencing), (ii) he was coerced into accepting the plea agreement (*i.e.,* because the sentencing court threatened him with an increased sentence if he did not accept the agreement, and the court and his attorney misinformed him about the maximum aggregate sentence that he faced if he proceeded to trial), and (iii) of defects

-17-

in trial counsel's advice (*i.e.,* failing to tell Petitioner about the affirmative defense of intoxication and failing to give him proper sentencing advice regarding his eligibility for concurrent sentences for burglary). *See* 2nd Am. Pet. at ¶ 13(2), 13(5), 13(6), & 13(8); *see also* Dkt. No. 20, Pet'r Mem. of Law.

### i.  Plea Allocution

Beginning with Petitioner's argument that the plea allocution was defective, we note that the Second Circuit has held that "due process does not mandate a factual basis inquiry by state courts" to create a valid plea. *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) (per curiam) (citations omitted) (cited in *Hill v. West*, 599 F. Supp. 2d 371, 388 (W.D.N.Y. 2009)).  A factual basis inquiry is "merely one way of satisfying the constitutional requirement that a plea be voluntary and intelligent." *Id.*  Furthermore, there is no constitutional requirement that each element of a crime be specifically pled to at a plea hearing, rather, it is sufficient if the defendant had adequate notice of the charges against him and the plea is voluntary.  *See Maltsev v. Albany Cnty. Prob. Dep't*, 303 F' Appx. 973 (2d Cir. 2008) (unpublished opinion) (*citing Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) for the proposition that a judge need not "'explain the elements of each charge to the defendant on the record'" as long as the defendant has notice of the charge through his counsel).

While reproduction of the entire plea colloquy for all fifteen counts would be excessive, the following excerpt reveals how the court put Petitioner on notice of the charges against him:

The Court:  With regard to the first count of the indictment, are you prepared to admit to me that on or about the 24th day of January 2005, in the Town of Salina in this County, you engaged in sexual intercourse with Jane Doe, a female whose true identity is known to the Grand Jury, by forcible compulsion. Is that true?

Defendant:  Yes.

| | |
|---|---|
| The Court: | How then do you plead to rape in the first degree, in violation of Section 130.35(1) of the Penal Law of the State of New York, guilty or not guilty? |
| Defendant: | Guilty. |

Plea Tr. at pp. 8–9.

The court proceeded to recite each of the remaining fourteen counts to Petitioner in substantially the same manner. *Id.* at pp. 9–15. Thus, we are satisfied that Petitioner was on notice of the charges against him, and as explained in this section, we find no evidence to suggest Petitioner's plea was involuntary. Therefore, this claim is meritless. *See Maltsev v. Albany Cnty. Prob. Dep't*, 303 F' Appx. 973.

Petitioner next argues that his plea allocution was invalid because the court failed to "ascertain the defendant's awareness and/or voluntary waiver of a meritorious affirmative defense." 2nd Am. Pet. at ¶ 13(6). This claim also is without merit. "[D]ue process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed." *Panuccio v. Kelly*, 927 F.2d 106, 111 (2d Cir. 1991) (quoting *Mitchell v. Scully*, 746 F.2d 951, 956–57 (2d Cir. 1984)). Therefore, the plea court was under no obligation to alert Petitioner to, or ascertain his awareness of, the affirmative defense of intoxication.

Petitioner next claims that he was not provided with a copy of the written waiver until after the plea hearing. However, as the excerpt of the plea hearing reproduced above reveals, the court made Petitioner well aware of the consequences of signing the waiver, and gave him several opportunities to question both the court and his attorney about those consequences before accepting the plea agreement. *See* Plea Tr. at pp. 7–8. Thus, there is no merit to Petitioner's claim that not having a written copy of the waiver left him unable to make an intelligent or voluntary decision to plea guilty.

*-19-*

<u>ii.  Coercion</u>

Next Petitioner claims that the sentencing court coerced him into accepting the plea agreement by threatening to increase his sentence if "he exercised his right to withdraw his plea." Pet. at ¶ 13(8).  The following discussion between Petitioner and the court occurred at the sentencing hearing directly before the sentence was imposed:

| | |
|---|---|
| The Court: | Mr. Grimes, anything you would like to say? |
| Defendant: | I'm truly sorry for what happened to [E.B.]. I didn't start no fire. |
| The Court: | You pled guilty to arson, Mr. Grimes. If you withdraw that, then I'm not bound by my sentence promise. |
| Defendant: | I'm not withdrawing anything. |
| The Court: | Come on up. |
| | (A discussion off the record at the Bench, both counsel present.) |
| Defendant: | I withdraw my statement and will proceed with sentencing. |

S. Tr. at pp. 9–10.

The second Amended Petition contains no allegations that anything improper was said during the off-the-record sidebar.  And, on its face, the colloquy above does not appear to contain any evidence of threatening or coercive language.  Although the judge told Petitioner that he would not be bound by his sentencing promise, such is the obvious consequence of breaching a plea agreement, and merely telling a defendant about it does not overwhelm a defendant's ability to make a knowing and intelligent choice.  *See United States ex rel. McGrath v. LaVallee*, 348 F.2d 373, 377 (2d Cir. 1965) ("The mere explanation of the alternatives facing the defendant . . . does not support the habeas corpus petitioner's allegations that the judge tricked and coerced (him) into pleading guilty by means of false assurances of consideration and a shorter sentence and fear inducing language.")

(internal quotation marks omitted); *see also United States v. Cruz*, 156 F.3d 366, 374 (2d Cir. 1998) ("Supreme Court has rejected the claim that the possibility of a 'proper degree of leniency' or offer of a lower sentence in exchange for a guilty plea impermissibly compels a defendant to incriminate himself or herself.") (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 365 (1978), *Chaffin v. Stynchcombe,* 412 U.S. 17, 31 (1973), & *Brady v. United States,* 397 U.S. 742, 751 (1970)).

Nor does Petitioner's statement that he did not start any fire undermine the Court's ability to accept the plea. The Supreme Court has ruled that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *N. Carolina v. Alford*, 400 U.S. 25, 37 (1970). Based on Petitioner's statements at the sentencing hearing, it would appear that after weighing his options he ultimately chose to move forward with his plea, notwithstanding his alleged lack of guilt. Although Petitioner claimed he did not start any fire, he also made it clear that "he was not withdrawing anything" and that he wanted to "proceed with sentencing." Other than Petitioner's self-serving and conclusory allegation, there is nothing to suggest that any threats were made, or that Petitioner's ability to make an intelligent choice was somehow overwhelmed. Therefore, we cannot find any support for the contention that Petitioner was coerced into accepting the plea agreement by the sentencing judge.

Petitioner next claims that he was not alerted by the court to the maximum aggregate sentence he faced if convicted, and that his counsel's erroneous information regarding sentencing coerced him into pleading guilty. 2nd Am. Pet. at ¶¶ 13(5) & 13(6). "It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently." *Wilson v. McGinnis,* 413 F.3d 196, 199 (2d Cir. 2005) (citing *Brady*

*v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242–43 (1969)).  In order for a plea agreement to be voluntarily and intelligently entered a defendant must be "'fully aware of the *direct* consequences'" of a guilty plea.  *United States v. Youngs*, 687 F.3d 56, 60 (2d Cir. 2012) (quoting *Brady v. United States*, 397 U.S. at 755) (alterations in original).  According to the Second Circuit, "direct consequences a[re] those that have a 'definite, immediate and largely automatic effect on the range of the defendant's punishment,' and any other consequence [is] merely collateral."  *Id.* (quoting *Wilson v. McGinnis,* 413 F.3d at 199).

The decision of a sentencing court, after trial, to impose consecutive sentences is not definite, immediate or largely automatic.  Rather, the decision to impose consecutive sentences involves a degree of discretion, on the part of the sentencing court, that renders such an outcome speculative rather than assured.  *Cf. People v. Bryant*, 92 N.Y.2d 216, 230-31 (N.Y. Ct. App. 1998) (explaining that while concurrent sentences must be imposed "when two or more offenses are committed through a single act," the decision to impose consecutive sentences where "separate or successive acts have occurred in the course of a single criminal transaction, and, neither is by difinition a material element of the other," is a matter of discretion.).  Here, the Court of Appeals ruled that "the crime of arson committed by [Petitioner] . . . was separate and distinct from the other crimes of which he was convicted [and], consecutive sentences were authorized[.]"  R., Ex. U.  Although, it was far from certain that consecutive sentences would be imposed, the plea transcript reveals that the court informed Petitioner of the maximum sentence possible for each of his crimes, as well as the term he would be sentenced to should the court accept his guilty plea.  Plea Tr. at pp. 2–3 & 5–6.  Because he was advised of the maximum sentence possible the sentencing court satisfied the due process requirement of advising him of any direct consequences that were definite,

immediate, and largely automatic. `The fact that the court never informed Petitioner that his sentences could run consecutively does not render his plea unknowing or involuntary. *See Rodriguez v. United States*, 2011 WL 4406339, at *16 (S.D.N.Y. Sept. 22, 2011) (citing *United States v. Fernandez,* 877 F.2d 1138, 1143 (2d Cir.1989) for the proposition that "the Court's failure to inform Petitioner that his sentences would run consecutively does not render his plea unknowing or involuntary. By stating the maximum and minimum penalties associated with his charges, the Court adequately informed Petitioner of the nature and consequences of his guilty plea."). Therefore, this claim is also without merit.

### iii.  Ineffective Counsel

It is clear that in adjudging the voluntary and intelligent nature of a plea, courts will assess whether the plea was entered into with the advice of counsel. *United States v. Broce,* 488 U.S. 563, 572 (1989).  When a petitioner who pleads guilty on the advice of counsel later attacks the voluntariness of that plea, the petitioner has the burden of proving (1) that counsel's advice deviated from the suitable range of competence expected of criminal lawyers, and (2) a reasonable probability that but for such deviation, he would not have plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (citations omitted) (applying the *Strickland v. Washington*, 466 U.S. 668 (1994) standard to challenges to guilty pleas based on ineffective assistance of counsel).  The Supreme Court has instructed us that federal district courts need not address both components of the *Strickland* test if a petitioner fails to establish either counsel's incompetence or prejudice. *Strickland v. Washington*, 466 U. S. at 697.  Moreover, counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Here, Petitioner claims that his trial counsel was ineffective by "failing to advise him that his

intoxication was an affirmative defense to the two top counts of the indictment, [and failing] to give petitioner proper sentencing advice regarding his eligibility for concurrent sentences for burglary." Pet'r Mem. of Law at (unnumbered) p. 1. Nonetheless, Petitioner's claims must fail because even if Petitioner was able to establish that his counsel's representation was constitutionally deficient, and we make no finding that it was, he has not met his burden to establish that he suffered any actual prejudice as a result of the alleged deficiencies. To establish prejudice, a Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59 (internal quotation marks omitted). As addressed below, Petitioner fails to make such a showing.

### *a. Intoxication Defense*

The Supreme Court has stated that "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. at 59 (citing *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984)). Petitioner has failed to direct the Court to any evidence which would establish that had he gone to trial he likely would have succeeded in mounting a successful intoxication defense. To begin with, intoxication is not a complete affirmative defense to a criminal charge; rather it can reduce the severity of the offense by negating the specific intent element of the crime charged. *People v. Harris,* 98 N.Y.2d 452, 474 n.4 (N.Y. Ct. App. 2002) (citing PENAL LAW § 15.25). Moreover, "[w]hile the requisite level of intoxication need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent, the degree of intoxication that a defendant must demonstrate is quite high." *Velasquez v. Ercole*, 878 F. Supp. 2d 387, 408 (E.D.N.Y. 2012)

(citations omitted).

Petitioner points out that during his sentencing hearing his counsel noted Petitioner's prior history of drug abuse and stated that: "[he] believes this happened because [Petitioner] was in a drug-induced state for several days leading up to this incident. Regularly smoking crack cocaine, and he literally in many ways was out of his mind at the time and place of this incident." *See* Pet'r Mem. of Law at (unnumbered) p. 3; S. Tr. at p. 8. However, aside from counsel's inexpert speculations, Petitioner has not directed us to any evidence in the record regarding the quantity of drugs he ingested, the amount of time that elapsed between the time the drugs were taken and the time the criminal acts occurred, nor what effect those drugs had on his ability to form the requisite intent. Thus, this Court cannot conclude from the scant evidence provided that Petitioner likely would have succeeded had he mounted an intoxication defense. *Cf. People v. Rodriguez*, 76 N.Y.2d 918, 920–21 (N.Y. Ct. of App. 1990) (finding that there was no evidence as to when the defendant ingested the narcotics, the quantity ingested or the effect they had on him, and therefore a jury instruction on intoxication was not warranted).

The only other evidence offered by Petitioner to substantiate that he suffered prejudice as a result of counsel's failure to inform him of the intoxication defense is his own statement that he "absolutely would have proceeded to trial had he been aware that an intoxication defense was viable under New York Law." Pet'r Mem. of Law at (unnumbered) p. 3. However, this statement is wholly insufficient to establish the proposition that it asserts. *See Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) (noting that petitioner's "testimony that he would have gone to trial had he known of the defense" is insufficient to establish prejudice under *Strickland v. Washington*) (citations omitted). Petitioner's statement is particularly incredible in light of the fact that, as demonstrated above, there

is nothing in the record to support the proposition that the intoxication defense was "viable."

### b. Sentencing Exposure

Petitioner alleges that his counsel's failure to "provide accurate advise concerning [his] maximum sentencing exposure" prejudiced him because he would not have accepted a thirty-year sentence had he known that he "could not have received a sentence in excess of 25 years." Pl.'s Mem. of Law at (unnumbered) pp. 3–4. Petitioner's assertion that he could not have received a sentence in excess of twenty-five years is incorrect. As established *supra*, *see* Part II.B(4)(i), because Petitioner's arson charge was considered a separate crime apart from his other felony charges, his sentencing exposure at trial was actually as high as fifty years.[9]

Moreover, the People's case against Petitioner was particularly strong. The victim knew Petitioner before he attacked her and she positively identified him to police as the perpetrator. Wade Tr. pp. 23–24. In the days following the attack, Petitioner was captured on video withdrawing money from the victim's bank account with an ATM card that was stolen from the victim during the attack at her apartment. R. at Ex. T, Victoria M. White, Esq. Affirm., dated Jan. 19, 2010, at pp. 2–3. Given the strength of the evidence against him, and the additional twenty years he could have been sentenced to had he proceeded to trial, it is doubtful that "there [wa]s a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59. If anything, knowledge of the longer sentence would only

---

[9] Here, Petitioner was charged with multiple B felonies, including first degree rape, second degree arson, first degree burglary, and first degree assault, all of which are violent felonies which carried a maximum term of imprisonment of twenty-five years. *See* PENAL LAW §§ 70.00, 70.02(1)(a), 120.15, 130.35, 150.15 & 160.15. Pursuant to PENAL LAW § 70.02(2)(a), the term of imprisonment for such crimes is to be stated in indeterminate terms. Moreover, pursuant to PENAL LAW § 70.30(e)(vi), "the aggregate maximum term of consecutive sentences, all of which are indeterminate . . . imposed for the conviction of three or more violent felony offenses . . . one of which is a class B violent felony offense, shall, if it exceeds fifty years, be deemed to be fifty years." Therefore, because Petitioner potentially could have been convicted of three or more violent B felonies, at least two of which could have run consecutively, his maximum exposure was as high as fifty years.

have served to further dissuade him from proceeding to trial.

Therefore, having determined that Petitioner's plea was entered intelligently and voluntarily with the assistance of effective counsel, we recommend that the second Amended Petition be **DENIED** as to each of these grounds.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Second Amended Petition (Dkt. No. 18) be **DENIED** in its entirety; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 12, 2014
     Albany, New York

Randolph F. Treece
U.S. Magistrate Judge